AUSA:   Karen Reynolds      Telephone:  (313) 720-0925
AO 91 (Rev. 11/11)  Criminal Complaint      Special Agent:      Kyle Sweeny      Telephone:  (313) 623-4584

# UNITED STATES DISTRICT COURT
for the

### Eastern District of Michigan

| | |
|---|---|
| United States of America<br>v.<br><br>D1  JIMMIE KONJA<br>D2  ADRIAN KONJA | Case No.   Case: 2:21-mj-30181<br>Judge: Unassigned,<br>Filed: 04-16-2021 At 12:12 PM<br>USA v. SEALED MATTER(CMP)(MLW) |

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ June 2018 - February 2021 _____ in the county of _____ Wayne _____ in the
_____ Eastern _____ District of _____ Michigan _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956(h) | Conspiracy to commit money laundering |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Kyle Sweeny,  Special Agent, IRS - Criminal Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __ April 16, 2021 __

City and state: __ Detroit, MI __

_____
*Judge's signature*

Elizabeth A. Stafford, U.S Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION FOR A CRIMINAL COMPLAINT**

I, Kyle Sweeny, being first duly sworn, hereby depose and state:

1.      I am a Special Agent with the Internal Revenue Service, Criminal Investigation Division in Detroit, Michigan, and have approximately 12 years in law enforcement. As a Special Agent, I am a federal law enforcement officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States and thereby authorized to request the issuance of federal seizure warrants. I have participated in multiple investigations involving counterfeiting, bank fraud, mail fraud, wire fraud, identity theft, and access device fraud.

2.      The information contained in this affidavit is based on my training, experience, and participation in financial crime investigations, as well as from personal observations during the course of this investigation. This affidavit is also based on information provided by law enforcement task force officers, agents, and others who have personal knowledge of the events and circumstances described herein.

3.      This affidavit is being submitted to establish probable cause for a criminal complaint for JIMMIE KONJA, a resident of West Bloomfield, Michigan, for conspiracy to commit money laundering (18 U.S.C. § 1956(h)). This affidavit is also being submitted to establish probable cause for a criminal complaint for ADRIAN KONJA, a resident of West Bloomfield, Michigan, for conspiracy to commit money laundering (18 U.S.C. § 1956(h)).

4.      As this affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint, it does not set forth each and every fact that I and others have learned during the course of this investigation.  Rather, the affidavit sets forth a summary of the investigation to date in order to establish probable cause that JIMMIE and ADRIAN KONJA engaged in criminal conduct.

## PROBABLE CAUSE

5.      The United States, including IRS-CI, Postal Inspection Service, and Homeland Security Investigations (HSI) is conducting a criminal investigation of JIMMIE KONJA and ADRIAN KONJA (the KONJAs) regarding violations of 18 U.S.C. §1956(h) (conspiracy to commit money laundering).

6.      The KONJAs operate a money service business (MSB) named Boulevard Check Cashers (BCC) located at 2697 West Grand Boulevard, Detroit, MI 48208.  The term "money services business" includes any person doing business, whether or not on a regular basis or as an organized business concern, in one or more of the following capacities:

(1) Currency dealer or exchanger.

(2) Check casher.

(3) Issuer of traveler's checks, money orders or stored value.

(4) Seller or redeemer of traveler's checks, money orders or stored value.

(5) Money transmitter.

(6) U.S. Postal Service.

7.      BCC is a check casher, a redeemer of stored value cards (i.e. prepaid cards and gift cards), and a money transmitter.

8.      Based on the facts set forth below, I believe that the KONJAs work in concert to conduct transactions exchanging illicitly obtained prepaid debit cards and gift cards, also known as stored value or prepaid access cards for cash.

*Prepaid Debit and Gift Card Activity*

**Financial Institutions**

9.      Records were obtained from U.S. Bank for the time period June 20, 2018, to October 16, 2018. US Bank began an internal audit of their prepaid debit and gift card arm of business and found an unusual number of prepaid cards being transacted at one location, BCC. US Bank suspected identity theft or a money laundering scheme because the number of cards did not fit the normal course of business that they had seen in other related companies. Records obtained from U.S. Bank reflect that from June 20, 2018, to October 16, 2018, 13,868 prepaid cards purchased in 26 different states totaling an aggregate value of $768,917.44 were debited at BCC. These prepaid cards were used within the first 74 days after they were initially loaded, with an average debit-time of 2-3 days after purchase.  It was determined that the prepaid card activity for BCC exceeded the normal activity for that type of business.

10.      BCC has also had its accounts terminated by several banks due to the volume of activity and income attributable to prepaid debit and stored value card activity in conjunction with a lack of transparency by JIMMIE at the outset of establishing these accounts with the bank by not disclosing he would be generating this level of income outside of his normal check cashing MSB. Based upon information learned during the course of this investigation this level of activity is not consistent with BCC's core business of check cashing. Over the last four years, the KONJAs have opened and maintained business accounts with most of the major national banking institutions in Michigan as well as some state and local banks.  Many of these accounts were closed by the financial institutions because of excessive cash withdrawals and excessive deposits from Raise.Com (Raise) and Zipmark, Inc.  The companies Raise and Zipmark, Inc. are in the business of facilitating the negotiation of or purchasing unwanted gift cards at a discounted price. Interviews with the local and national banks that closed the KONJA's accounts revealed that the closures were for similar reasons.   After account activity caused a bank to close one of the KONJA's accounts, the KONJAs set up

3

accounts at a new bank, continuing the same activity until the new banks closed the account.

11.     BCC maintained an account with Main Street Bank for the period March 2019 through February 2020. 2697 West Grand Boulevard, Detroit, MI 48208 is listed as the address for the bank records. The bank records obtained from Main Street Bank show continued suspicious deposit activity. This time frame also includes the deposits from the undercover operations described below. The activity consists of deposits from credit card processors that matches the suspicious activity from US Bank and the other financial institutions BCC has used. BCC received deposits of over 7.5 million dollars from credit and prepaid cards being utilized at BCC during the eight-month review period. Main Street Bank closed BCC's account in February 2020. Jimmie Konja then moved his business bank account Jimmie and TLH Konja Inc. to Sunrise Bank. The only item noted for sale by individuals who have entered the store is perfume.

12.     Records obtained from Sunrise Bank for the period March 2020 through February 2021 show continued suspicious deposit activity. 2697 West Grand Boulevard, Detroit, MI 48208 is listed as the address for the bank records. The activity consists of deposits from credit card processors that matches the suspicious activity from the previous financial institutions that BCC has used with account name Jimmie and TLH Konja Inc. BCC drastically increased their deposits during this time frame and received over 4.5 million dollars from credit and prepaid cards being utilized at BCC during the four-month review period.

13.     Recent financial records were reviewed for several months in 2020 through February 2021 and revealed the same activity utilizing the credit card processors that was observed during the undercover operations when $34,100 in prepaid cards were transacted at BCC. I believe the majority of the funds deposited from the credit card processor to the Sunrise account are likely derived from BCC's purchase of large quantities of fraudulently obtained/stolen prepaid cards.

**Raise.com**
14.     Financial analysis of Raise records provided for BCC revealed that between December 2013 and July 2016, the BCC store received in excess of

4

$9,000,000 from Raise for facilitating the sale of stored value cards. 2697 West Grand Boulevard, Detroit, MI 48208 is listed as the address on file for Raise.com.

15.     Employees at Raise were asked why they terminated their business relationship with the KONJAs. The employees stated they analyze each account by conducting a risk assessment and assigning a risk rating. This assessment is based in part on the number of cards sold by the KONJAs compared to the number of those cards that were rejected. (One of the reasons the stored value cards are rejected is the stores where the cards were purchased or credit card companies of the cards initially used to purchase the stored value cards cancel the stored value cards once they determine they were purchased fraudulently.) The risk assessment completed by Raise caused it to terminate its business relationship with the KONJAs. The gift cards were tracked back to the originating stores by investigators and found large quantities of cards were fraudulently purchased using stolen credit cards.

**Witness Information**

16.     A subject was discovered in a law enforcement bulletin as being investigated for similar activity that was being conducted at BCC. He was from Michigan and was caught in Texas with stolen credit card numbers and fraudulently obtained prepaid cards. The subject agreed to an interview in hopes of showing cooperation to the prosecutors of his case. The witness stated he obtains stolen credit card numbers from the dark-net and uses them to purchase prepaid cards and gift cards in multiple states throughout the United States. He then exchanges the cards for cash at the KONJAs' MSB. The subject revealed it is known in the Detroit metropolitan area that the KONJAs' MSB business accepts fraudulently obtained prepaid cards and gift cards without asking any questions. The KONJAs charge a negotiation fee of approximately 10% of the face of the card.

17.     Based on my experience and investigations and that of other agents it has been determined that up to a 30% negotiation fee is charged by other MSB's in the Detroit area for stored value cards.

**Undercover Operations**

18.     Multiple undercover operations have been conducted at BCC during this investigation. An undercover agent (UCA) was sent in multiple times with prepaid debit cards and gift cards. The UCA wanted cash for the cards and stated the cards were from an illegal source. The UCA also transacted over $10,000 in cards for cash to see if any FinCen reporting was conducted on the activity. During the operation the KONJA's were observed using Point of Sale system credit card scanners to complete the transactions.

19.     On April 12, 2019, the first undercover operation took place to determine the fee being charged to exchange prepaid debit or gift cards for cash. The UCA was able to negotiate $550 in prepaid cards for $487 in cash. The UCA negotiated Visa and MasterCards prepaid debit cards for a 10% fee while the American Express prepaid debit cards were negotiated for a 15% fee. The KONJAs were both present and participated in the transactions with the UCA. The prepaid debit cards were left at 2697 West Grand Boulevard, Detroit, MI.

20.     On May 16, 2019, the same UCA was able to exchange $1,550 in prepaid debit cards for $1,260 in cash. The UCA told the KONJAs, who were both conducting the negotiation transaction, the cards were obtained from the sale of cocaine. After acknowledging this comment, ADRIAN still conducted the transaction with the UCA. The UCA also asked ADRIAN how many cards he could negotiate at one time. ADRIAN told him he could negotiate as many cards as the UCA could bring. The prepaid debit cards were left at 2697 West Grand Boulevard, Detroit, MI.

21.     On June 28, 2019, the UCA was able to negotiate $12,500 in prepaid debit cards for $11,075 in cash. The UCA negotiated with ADRIAN. The prepaid debit cards were left at 2697 West Grand Boulevard, Detroit, MI.

22.     On July 30, 2019, the UCA was able to exchange $19,500 in prepaid debit cards for $17,550 in cash. Both of the KONJAs participated in that transaction.  Again, the UCA told the KONJAs the cards were obtained from the sale of cocaine. Upon hearing this the KONJAs told the UCA they were able to

6

negotiate as many cards as the UCA could bring them. The prepaid debit cards were left at 2697 West Grand Boulevard, Detroit, MI.

23.     On July 31, 2019, the UCA was able to exchange $18,000 in prepaid debit cards for $16,200 in cash. Both of the KONJAs participated in that transaction.  The UCA provided cards to JIMMIE, who in turn handed them to Adrian for processing. JIMMIE stated that only one machine was able to process cards at the store. The prepaid debit cards were left at 2697 West Grand Boulevard, Detroit, MI.

24.     As described above the funds from the UCA transactions were wired and deposited into JIMMIE KONJAs business bank account from the third-party credit card processor used at the store to transact the stored value cards. The funds are continually withdrawn in large cash withdraws and transported by armored car to BCC in order to facilitate and further the illegal purpose.

25.     I know through my experience as a special agent of the IRS-CI that the use of stored value cards and credit card results in interstate electronic communications and affects interstate commerce. When a customer uses a stored value card and/or a credit card at a store (the merchant), information is transmitted electronically from the merchant's card reader to the merchant's credit card processor. The major credit card processors in the United States are based outside of Michigan and are often affiliated with large banks. The credit card processor will transmit electronically the information received from the merchant to the appropriate credit card network. The sales information originating with the merchant and forwarded to the credit card processor and credit card network eventually results in a debit to the stored value card or the credit card accountholder's account and a corresponding electronic funds transfer from a bank subsidiary to the merchant's bank. Given the relative complexity and interconnectivity of credit card processing, it is inevitable that, for any given credit card or stored value card purchase, information will be transmitted electronically between and among computers and computer servers located in multiple states, including the state in which the purchase occurred.

# CONCLUSION

26.     In light of the information and evidence described above, I submit that there is probable cause to believe that JIMMIE and ADRIAN KONJA committed the following federal offense in the Eastern District of Michigan:

- From at least January 2015 through at least February 2021, JIMMIE and ADRIAN KONJA, did knowingly enter into an agreement by two or more parties to commit an offense under 18 USC 1956 or 1957 fully understanding its purpose and took steps to continue the illegal purpose in violation of 18 U.S.C. §1956(h) (conspiracy to commit money laundering).

_____
KYLE SWEENY, Special Agent
Internal Revenue Service, Criminal Investigation

Sworn to before me and signed in my presence
and/or by reliable electronic means

Date:   April 16, 2021

_____
ELIZABETH A. STAFFORD
United States Magistrate Judge